Case 1:21-cr-00667-PKC   Document 25   Filed 04/20/22   Page 1 of 4



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 20, 2022

**By ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Jamie A.D. Scott*, 21-667 (PKC)

Dear Judge Castel:

The Government respectfully submits this letter in advance of sentencing in the above captioned matters, which is scheduled for April 27, 2022. For the reasons explained below, the Government submits that a significant sentence below the stipulated United States Sentencing Guidelines (the "Guidelines") range of 135 to 168 months' imprisonment (the "Stipulated Guidelines Range") that is consistent with the recommendation by the Probation Department would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **A. Factual Background**

In or about April 2021, an undercover agent ("UC-1") received a call from an individual ("CC-1") that CC-1 was traveling to New York City to sell UC-1 eight kilograms of fentanyl. (Presentence Report ("PSR") ¶ 8.) CC-1 told UC-1, in sum and substance, that CC-1 was bringing six kilograms himself and that he had been directed by his boss to meet with another individual in New York to get another two kilograms. (*Id.*) On April 6, 2021, CC-1 and UC-1 continued to have telephone contact to discuss, in sum and substance, when and where they would meet later that day to execute the purchase. (*Id.* ¶¶ 9-10.) During one of these phone calls between UC-1 and CC-1, UC-1 was introduced to another person, later identified as Jamie Scott, the defendant. (*Id.* ¶ 10.) Later on the same day, UC-1 met Scott at a location in Manhattan. (*Id.* ¶ 12.) During this meeting, Scott told UC-1 that he was there to drop off some packages, but that UC-1 would need to speak to Scott's boss to discuss the price. (*Id.* ¶ 13.) Scott then directed UC-1 to a building nearby, where Scott entered and then exited shortly thereafter with a duffel bag that contained approximately 7.5 kilograms of fentanyl. (*Id.* ¶¶ 13, 15). During a post-arrest statement, Scott revealed to law enforcement officers that he had a storage space in the building, and provided consent to search that storage space, in which law enforcement officers found additional quantities of narcotics—several pounds of marijuana and what appeared to be samples of narcotics—and narcotics paraphernalia, such as packaging and a kilo press. (*Id.* ¶ 14.)

The defendant has been detained since his arrest on April 6, 2021.

## B. Discussion

### 1. Sentencing Guidelines

The defendant pled guilty, pursuant to a plea agreement, to the lesser included offense of conspiracy to distribute and possess with conspiring to possess and distribute 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). (*See* PSR ¶ 5.) Pursuant to the plea agreement, the parties agreed to the following stipulated Guidelines calculations: Under U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(4), the base offense level is 34, because the offense involved at least 4 kilograms but less than 12 kilograms of fentanyl. (PSR ¶ 5.) Assuming the defendant clearly demonstrates acceptance of responsibility, a three-level reduction pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), should be applied at sentencing, bringing the adjusted offense level to 31. (PSR ¶5.) Based on the information available to the Government at the time the Government entered into the plea agreement, the Government calculated six criminal history points, putting the defendant in Criminal History Category III. (PSR ¶ 5.) Based on the foregoing, the parties stipulated a Guidelines range of 135 to 168 months' imprisonment. (PSR ¶ 5.) The Probation Department agrees with this calculation.

### 2. Applicable Law

As the Court is aware, the Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and that range "should be the starting point and the initial benchmark" for the Court's sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *id.* at 46, they are not merely a "body of casual advice." *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, a court then considers the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Gall*, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

### 3. A Sentence Below the Stipulated Guidelines Range is Adequate

The Government respectfully submits that a significant sentence below the Stipulated Guidelines Range of 135 to 168 months' imprisonment that is consistent with the recommendation from the Probation Department is sufficient, but not greater than necessary, to comply with the purposes of sentencing. The Section 3353(a) factors most applicable here include the nature and seriousness of the offense, the history and characteristics of the defendant, the need to protect the public.

As described above, the defendant was in possession of approximately 7.5 kilograms of fentanyl which he intended to distribute to UC-1. Fentanyl is a particularly dangerous and pernicious drug, and the amount that the defendant intended to distribute was an enormous amount that could have wreaked havoc in our community and caused untold number of deaths. Indeed, according to the Centers for Disease Control and Prevention (the "CDC"), in 2019 alone, fentanyl and its analogs caused over 2,000 overdose deaths in New York State. *See* CDC, Synthetic Opioid Overdose Data: 2018–2019, available at https://www.cdc.gov/drugoverdose/deaths/synthetic/index.html (last visited August 25, 2021) ("In 2019, more than 36,000 deaths involving synthetic opioids (other than methadone) occurred in the United States, which is more deaths than from any other type of opioid."). The offense conduct involved approximately 7.5 kilograms of fentanyl. By way of context, as little as two *milligrams* of fentanyl can be fatal. *See* Drug Enforcement Administration, Facts About Fentanyl, *available at* https://www.dea.gov/resources/facts-about-fentanyl (last visited August 25, 2021). Thus, there is little question that the offense was extremely serious.

Furthermore, this is the defendant's fourth conviction, and the offense conduct occurred just months after the defendant was released from his most recent term of supervised release. This criminal history also supports a significant sentence.

Nonetheless, the Government believes that a below-Guidelines sentence is adequate and appropriate here in light of several mitigating factors. The evidence appears to show that, at least with respect to this particular transaction, the defendant was not the organizer nor owner of the narcotics, and did little more than storing the narcotics and delivering them to a buyer lined up by others.

But, due to the seriousness of the conduct and the defendant's criminal history, the downward variance should be no more than what is recommended by the Probation Department.

### 4. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a significant sentence below the Stipulated Guidelines Range of 135 to 168 months.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: /s/ _____
    Ni Qian
    Assistant United States Attorney
    Tel: (212) 637-2364

cc: Counsel of Record (via ECF and Email)